SHARON A. RYAN, APPELLANT, V. HOWARD M. RYAN, APPELLEE.

600 N.W. 2d 739

Filed September 17, 1999. No. S-98-280.

Michael N. Schirber, of Schirber Law Offices, P.C., for appellant.

Carll J. Kretsinger, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

Sharon A. Ryan filed a petition in the Sarpy County District Court for an accounting to determine how much her ex-husband, Howard M. Ryan, owed her in arrearage pursuant to the terms of the parties' divorce decree. The district court found that a portion of the decree was void insofar as it ordered a division of Howard's military disability pension. Given that, the district court determined that Howard did not owe Sharon any sum of money and canceled any such arrearage in previous orders. Sharon appeals, and we affirm.

## II. PROCEDURAL HISTORY

### 1. TERMS OF ORIGINAL DIVORCE DECREE

The parties married on July 10, 1965, in Council Bluffs, Iowa, and were divorced by order of the Sarpy County District Court on April 4, 1986. At the time of their divorce, the parties had three children, the oldest two of whom were at or very near the age of majority. By the terms of the divorce decree, Sharon had custody of the parties' youngest child, subject to reasonable visitation by Howard. The decree also ordered Howard to pay varying amounts of child support until the youngest child reached the age of majority.

In a paragraph separate from the child support order, the decree mandated that Howard pay Sharon one-half of his disability income from the Veterans' Administration (VA) so long as he received such income (VA disability income). Should the amount of Howard's VA disability income ever decrease, this provision of the decree required Howard to furnish a copy of any VA check showing such a reduction to the clerk of the district court so that an adjustment could be made to the actual sum payable to Sharon in the order. At the time, Howard's monthly VA disability income was $433, of which the district court ordered Howard to pay Sharon $216.50. In separate paragraphs, the decree divided the balance of the parties' property and ordered Howard to pay Sharon alimony.

Howard filed a motion for new trial on April 10, 1986, asserting that the district court erred in, among other things, awarding Sharon one-half of Howard's VA disability income. By way of a journal entry, the district court overruled Howard's motion for new trial on April 18. The district court subsequently issued orders to withhold and transmit funds from Howard's regular wages due to arrearages in Howard's obligations under the decree.

By May 16, 1988, Howard's child support and alimony arrearages had been fully satisfied via the garnishment of Howard's wages. However, the district court determined that Howard's obligation to pay Sharon one-half of his VA disability income was $4,489.50 in arrears. Nevertheless, the district court did not garnish Howard's wages further to settle the arrearage, finding that Howard had no funds available to accommodate such an order. Instead, the district court ordered Howard's wages to remain garnished in the amount of $216.50 per month so that the VA disability income arrearage would not continue to increase.

## 2. MODIFICATION

On September 2, 1988, the district court found that, including interest, Howard was in arrears $311.19 on his child support obligation, $380.96 on his alimony obligation, and $5,434.79 on his obligation to split his VA disability income with Sharon, as well as other miscellaneous items.

The district court ordered that of the $8,087.49 on deposit with the court, $6,701.91 be remitted to Sharon to remedy those arrearages and $1,385.58 be remitted to Howard. Howard filed a petition with the district court to modify the decree's alimony and child support provisions on September 20, 1988, alleging a material change in circumstances.

After a hearing held February 7, 1989, the district court found that Sharon had remarried and that she was earning an increased income. As such, the district court retroactively terminated Howard's alimony obligation and ordered a slight reduction in Howard's child support obligation, to be triggered in the event that Sharon were to claim the parties' youngest child as a tax deduction.

The district court also found that Howard's VA disability income had been reduced to $403 per month. Consequently, the district court set Howard's monthly obligation on that matter at $201.50 beginning March 1, 1989, and ordered that Howard's wages remain garnished in that amount. The district court continued that garnishment order on April 21.

### 3. VOIDING DIVISION OF VA DISABILITY INCOME

On August 6, 1997, Sharon filed a motion to show cause why Howard should not be held in contempt for refusing to comply with the provision in the decree directing Howard to pay one-half of his VA disability income to Sharon. The district court granted Sharon's motion to show cause and ordered Howard to appear. Howard filed a responsive pleading asserting that the decree's provision ordering Howard to split his VA disability income with Sharon was preempted by federal law and, thus, unenforceable.

Sharon responded by filing a petition for accounting on September 17, 1997, alleging that Howard was approximately $7,000 in arrears in his obligation to split the VA disability income with Sharon under the provisions of the decree. Howard answered by admitting that the decree as modified ordered Howard to pay Sharon $201.50 per month so long as he receives VA disability income. However, Howard denied that he was $7,000 in arrears by failing to comply with the order.

The district court held a hearing on January 29, 1998. At the close of evidence, the district court informed counsel that it intended to treat the matter as an application to determine amounts due under the decree and not an accounting action. On February 13, the district court concluded that Howard did not owe Sharon any arrearage under the terms of the decree pertaining to Howard's VA disability income.

### III. ASSIGNMENTS OF ERROR

Sharon claims, restated, that the district court erred in (1) finding that Howard did not owe Sharon anything and canceling Howard's arrearage with respect to the provision in the decree dividing Howard's VA disability income, (2) denying Sharon's

motion for attorney fees and court costs, and (3) overruling Sharon's motion for new trial.

## IV. STANDARD OF REVIEW

■ Sharon asserts, without challenging any of the underlying facts or procedural history of this case, that the doctrine of res judicata foreclosed the district court's jurisdiction to cancel Howard's obligation to share his VA disability income with Sharon. A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, in which case the appellate court must reach a conclusion independent from the lower court's decision. *Bonge v. County of Madison*, 253 Neb. 903, 573 N.W.2d 448 (1998).

■ Similarly, the applicability of res judicata presents a question of law, requiring an appellate court to reach a conclusion independent of that of the lower court. *Vann v. Norwest Bank Neb.*, 256 Neb. 623, 591 N.W.2d 574 (1999).

■ Regardless of whether a case is viewed as a domestic relations case or a general civil action for an accounting and recovery of amounts owed, the denial of motions for new trial and attorney fees will be upheld absent an abuse of discretion. See, *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997); *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997).

## V. ANALYSIS

### 1. DIVISION OF VA DISABILITY INCOME

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. See *Bonge v. County of Madison, supra.* Therefore, we first address Sharon's claim that the lower court lacked jurisdiction to cancel Howard's obligation.

### (a) Inapplicability of Res Judicata

Sharon advances her lack-of-jurisdiction argument by asserting that the doctrine of res judicata barred Howard from relitigating the division of his VA disability income, because that issue was litigated in prior proceedings between the parties.

■ It is true that the doctrine of res judicata normally bars future litigation of points upon which the court in the original proceeding was required by the parties to form an opinion, as well as of every point which the parties could have brought forward in the original divorce proceeding had they exercised reasonable diligence. See, *Vann v. Norwest Bank Neb.*, *supra*; *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (1997).

In support of her position, Sharon points out that the parties required the district court to form an opinion on the division of Howard's VA disability income in the initial divorce proceeding—albeit without asserting federal preemption. Even if the parties did not actually litigate the issue of federal preemption in the original divorce proceeding, Sharon notes that Howard could have asserted it at any of the various hearings that compose the record in this case.

Moreover, the original divorce action and the subsequent proceedings clearly reached final judgment on the merits in a court of competent jurisdiction—which would usually operate as a bar to future litigation of issues that were or could have been litigated between Howard and Sharon. See *Swift v. Dairyland Ins. Co.*, 250 Neb. 31, 547 N.W.2d 147 (1996).

■ Nevertheless, res judicata will not preclude a second suit between the same parties if the forum in which the first action was brought did not have jurisdiction to adjudicate the action; stated another way, judgments entered by a court without subject matter jurisdiction are void and subject to collateral attack. See, *Marshall v. Marshall*, 240 Neb. 322, 482 N.W.2d 1 (1992) (applying this rule in action to enforce void dissolution of marriage judgment); *Zenker v. Zenker*, 161 Neb. 200, 72 N.W.2d 809 (1955) (holding that divorce decree issued by court without subject matter jurisdiction was not res judicata as to any issue purported to have been raised therein); *Koch v. County of Dakota*, 151 Neb. 506, 38 N.W.2d 397 (1949) (holding that judgment entered without subject matter jurisdiction may not be used as basis of application of res judicata). See, also, 50 C.J.S. *Judgment* § 702 (1997).

■ In keeping with that, the longstanding rule in Nebraska is that a void judgment may be attacked at any time in any proceeding. *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d

15 (1996). Likewise, a district court has the power to question sua sponte at any time its statutory authority to exercise subject matter jurisdiction. See, *County of Sherman v. Evans*, 252 Neb. 612, 564 N.W.2d 256 (1997); *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 540 N.W.2d 554 (1995).

(b) No Jurisdiction to Divide VA Disability Income

Because res judicata does not bar collateral attacks on void judgments, the outcome of this issue hinges on whether the district court had subject matter jurisdiction to divide Howard's VA disability income. As illustrated by our foregoing analysis, if the district court lacked subject matter jurisdiction to divide the VA disability income, then that portion of the order dividing such income was void and subject to collateral attack in any subsequent enforcement action.

The question of a court's subject matter jurisdiction does not turn solely on the court's authority to hear a certain class of cases, such as dissolutions of marriage or accounting actions; it also involves determining whether a court is authorized to address a particular question that it assumes to decide or to grant the particular relief requested. Compare, *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994) (focusing on particular question lower court assumed to decide); *Lewin v. Lewin*, 174 Neb. 596, 119 N.W.2d 96 (1962) (indicating that court must have subject matter jurisdiction to address particular question it assumes to decide).

It is well established that military retirement benefits cannot constitute divisible marital property except to the extent permitted by the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1401 et seq. (1982). *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997). Disability benefits, such as Howard's, are not divisible marital property under the USFSPA. See *id.*

The question whether the decree is subject to collateral attack, therefore, turns on an examination of the nature of the federal law on this point. Specifically, we must determine if federal law operates to preclude state courts from exercising subject matter jurisdiction over disability-based military retirement benefits.

Our analysis begins with the U.S. Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981). In that case, the Supreme Court addressed whether military retirement benefits could be included in the marital estate for distribution in divorce proceedings, or " 'whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition.' " 453 U.S. at 221, quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979).

The Court ultimately determined that the distribution of military retirement benefits in dissolution proceedings frustrated significant federal objectives, particularly in the area of national security, and that the application of state law relating to divorce " 'interfere[s] directly with a legitimate exercise of the power of the Federal Government.' " *McCarty v. McCarty*, 453 U.S. at 235, quoting *Free v. Bland*, 369 U.S. 663, 82 S. Ct. 1089, 8 L. Ed. 2d 180 (1962). Thus, the Court concluded that the Supremacy Clause of the U.S. Constitution demanded that state law be overridden. See *McCarty v. McCarty, supra.*

Congress enacted the USFSPA as a direct response to the U.S. Supreme Court's decision in *McCarty v. McCarty*. See *Kramer v. Kramer, supra*. The effect of the USFSPA was addressed by the U.S. Supreme Court in *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). In that case, the Court confronted the question whether disability benefits were among those that Congress had intended to make distributable under the USFSPA. See *id.*

The Court noted:

Because pre-existing federal law, as construed by this Court, completely pre-empted the application of state community property law to military retirement pay, Congress could overcome the *McCarty* decision only by enacting an affirmative grant of authority giving the States the power to treat military retirement pay as community property.

*Mansell v. Mansell*, 490 U.S. at 588. The Court concluded that the USFSPA had a preemptive effect of its own and held that "the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military

retirement pay that has been waived to receive veterans' disability benefits." 490 U.S. at 594-95.

 Based on the preemptive effect of the USFSPA, we conclude that federal law precludes a state court, in a dissolution proceeding, from exercising subject matter jurisdiction over VA disability benefits. Therefore, in the instant case, that portion of the decree purporting to divide Howard's VA disability income is void for want of jurisdiction. Sharon's assignment of error on this point is without merit.

### (c) Severability of Partially Void Order

Although the parties did not address the issue, we are presented with the following question: What becomes of a judgment, such as the divorce decree in this case, when part of it is void (division of the VA disability income) and part of it is valid (the balance of the decree)?

Under early common law, a judgment was considered an indivisible entity which could not be vacated only in part. *Weems v. Boillot*, 259 Ark. 611, 535 S.W.2d 817 (1976). See, also, *Capital Bond & Investment Co. v. Hood*, 218 Cal. 729, 24 P.2d 765 (1933) (holding that entire judgment must be vacated when any part of it is void).

However, many jurisdictions began abandoning this rigid rule after the U.S. Supreme Court did so in *Semmes v. United States*, 91 U.S. 21, 23 L. Ed. 193 (1875). See, *Reed v. Scott*, 820 P.2d 445 (Okla. 1991); *Blair v. State*, 640 S.W.2d 867 (Tex. 1982); *Wood v. Wood*, 100 Idaho 387, 597 P.2d 1077 (1979); *In re Marriage of Maskel*, 225 N.W.2d 115 (Iowa 1975); *Aldrich v. Aldrich*, 147 W. Va. 269, 127 S.E.2d 385 (1962), *reversed on other grounds* 378 U.S. 540, 84 S. Ct. 1687, 12 L. Ed. 2d 1020 (1964); *Road Material & Equip. Co. v. McGowan*, 229 Miss. 611, 91 So. 2d 554 (1956); *State ex rel. Pub. Serv. Comm. v. Johnson Cir. Ct.*, 232 Ind. 501, 112 N.E.2d 429 (1953); *Little v. Mann*, 302 Ky. 661, 195 S.W.2d 321 (1946); *Smith v. District Court*, 63 Nev. 249, 167 P.2d 648 (1946); *Lane v. Becton*, 225 N.C. 457, 35 S.E.2d 334 (1945); *State ex rel. Lang v. Civil Court*, 228 Wis. 411, 280 N.W. 347 (1938); *Spencer v. Franks*, 173 Md. 73, 195 A. 306 (1937); *French v. Credit Co.*, 99 Colo. 447, 64 P.2d 127 (1936); *Gaylor v. Miller*, 166 Tenn. 45, 59

S.W.2d 502 (1933); *Jane Doe v. Fife Municipal Court*, 74 Wash. App. 444, 874 P.2d 182 (1994), *rev. denied* 125 Wash. 2d 1024, 890 P.2d 464 (1995).

While this court has never explicitly said that the valid part of a judgment may be upheld when a void part of it is severable, we have implied as much. See *State, ex. rel. Nebraska State Bar Ass'n, v. Merten*, 142 Neb. 780, 7 N.W.2d 874 (1943) (upholding valid portion of district court judgment ordering trustee defendant to make proper application of trust funds, and vacating invalid portion of same judgment that reversed lower court order discharging trustee as administrator).

After considering such an approach, we find it persuasive for two overlapping reasons. First, it tends to further the interests of judicial economy by not forcing parties to relitigate that portion of a judgment that was rightly decided. Second, it promotes fairness insofar as it does not deprive the parties of a just result simply because a different and independent portion of the judgment was void.

In view of that, we now hold that a judgment can be vacated in part and upheld in part when a void portion of that judgment is severable from the valid portion. We understand the term "severable" to mean that the valid and void portions are not inextricably intertwined with each other; in other words, the valid portion does not have to depend or rely on the void portion in any way to stand on its own or to be carried out.

In so doing, we also find that the balance of the divorce decree in the instant case is valid and severable from that portion that is void for dividing the VA disability income. Thus, the district court did not err in voiding the division of the VA disability income without vacating the balance of the divorce decree.

## 2. ATTORNEY FEES

Sharon claims that the district court erred in refusing to award her attorney fees and costs. In addition to attorney fees, Sharon asserts that she incurred costs in making transcripts of the previous proceedings between herself and Howard available to the district court. In other words, Sharon alleges that she incurred these costs "for the benefit of the [district] court." Brief for appellant at 13.

We determine that the district court did not abuse its discretion in denying Sharon an award of attorney fees and costs.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997); *Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 559 N.W.2d 740 (1997). Customarily, attorney fees and costs are awarded only to prevailing parties, *Brodersen v. Traders Ins. Co.*, 246 Neb. 688, 523 N.W.2d 24 (1994), or assessed against those who file frivolous suits, Neb. Rev. Stat. § 25-824 (Reissue 1995).

In the instant case, Sharon did not prevail on any issue and it certainly cannot be said that Howard's defense was frivolous. Therefore, this assignment of error is also without merit.

### 3. MOTION FOR NEW TRIAL

A motion for new trial is to be granted only when an error prejudicial to the rights of the unsuccessful party has occurred. *Heye Farms, Inc. v. State*, 251 Neb. 639, 558 N.W.2d 306 (1997); *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996). The foregoing analysis reveals that the district court did not commit any prejudicial error in the instant case.

### VI. CONCLUSION

Because each of Sharon's assignments of error is without merit, we affirm the judgment of the district court.

AFFIRMED.